**GREGORY KAFOURY**
OSB #741663
Kafoury@kafourymcdougal.com
**MARK McDOUGAL**
OSB #890869
mcdougal@kafourymcdougal.com
**JASON KAFOURY**
OSB #091200
jkafoury@kafourymcdougal.com
Kafoury & McDougal
411 SW 2nd Ave, Suite 200
Portland OR 97204
Telephone: 503-224-2647
Fax: 503-224-2673

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| D.B., <br><br> Plaintiff, <br><br> v. <br><br> THE ARCHDIOCESE OF PORTLAND IN OREGON, an Oregon corporation; THE ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON AND SUCCESSORS, and a corporation sole, d.b.a., THE ARCHDIOCESE OF PORTLAND IN OREGON, <br><br> Defendants. | Case No: <br><br> **COMPLAINT** <br><br> **(Sexual battery of a Child/*Respondeat Superior*, Intentional Infliction of Emotional Distress/*Respondeat Superior*)** <br><br> JURY TRIAL DEMANDED <br><br> Not Subject to Mandatory Arbitration |

Plaintiff demands a jury trial and alleges:

**STATEMENT OF JURISDICTION AND VENUE**

**1.**

This Court has jurisdiction over this case pursuant to 28 U.S.C. 1334(A) and Sec. 6.4.3 and 11.1 of the Third Amended and Restated Joint Plan of Reorganization of Debtor, Tort Claimants Committee, Future Claimants Representative, and Parish and Parishioners Committee,

PAGE 1 -   COMPLAINT

dated April 9, 2007 in the matter of *The Roman Catholic Archbishop of Portland in Oregon and Successors, and a Corporation Sole, d.b.a., The Archdiocese of Portland in Oregon*, *Debtor*, United States Bankruptcy Court for the District of Oregon, case number 04-37154-ELP11 (2007) ("The Plan"). Venue is proper in this court pursuant to 28 U.S.C. 1409(a) and 28 U.S.C. 1391(B), pursuant to the above-cited paragraphs of The Plan.

## PARTIES

2.

Plaintiff "D.B." is an adult male born in the year 1972. At all times relevant to the acts alleged in this complaint, plaintiff was an unemancipated minor. "D.B." is a pseudonym. Plaintiff uses a pseudonym as he was the victim of childhood sexual abuse and disclosure of his identity to the public would further victimize him and cause emotional injury. Plaintiff's claims are sensitive in nature, and proceeding under a fictitious name will minimize additional fear, embarrassment, humiliation, and possible retaliation from third parties that public disclosure of plaintiff's identity might otherwise generate. Plaintiff will inform defendants of plaintiff's identity and thus defendants will not be prejudiced by plaintiff proceeding under a fictitious name.

## CLAIMS FOR RELIEF

### Child Sexual Battery/Respondeat Superior

3.

At all times relevant to this complaint, the Archdiocese of Portland in Oregon and the Roman Catholic Archbishop of Portland in Oregon, d.b.a. the Archdiocese of Portland in Oregon (hereinafter referred to as "defendants") were and are Oregon corporations. At all times relevant to this complaint, defendants owned, controlled, and operated St. Therese The Child Jesus Catholic Church and school.

PAGE 2 -   COMPLAINT

4.

Plaintiff became a member of St. Therese Catholic parish in 1972. The acts of sexual abuse complained of herein took place during the plaintiff's minority.

5.

At all times relevant to this complaint, Fr. Joseph A. Baccellieri was an employee and agent of defendants. During that employment and agency, Fr. Baccellieri provided pastoral services to plaintiff and was acting within the course and scope of his employment or agency in performing duties for and on behalf of the defendants.

6.

At all times relevant to this complaint, defendants empowered Fr. Baccellieri to perform all duties of a priest, including pastoral and religious services, counseling, spiritual and moral guidance, and religious instruction, and other duties of a priest. Defendants knew that as part of his duties as a priest, Fr. Baccellieri would be in a position of trust and confidence with children and their families, including the plaintiff in this case. Defendants retained the right to control the means, methods, and physical details of any priest with faculties in the Archdiocese.

7.

At all times relevant to this complaint, defendants also held Fr. Baccellieri out as a "priest" through the act of public ordination and the granting of faculties to Fr. Baccellieri in the Archdiocese. At all times relevant to this complaint, defendants, in public documents and statements, proclaimed that its priests were subject to a set of behavioral parameters, including celibacy, and were therefore safe and trustworthy. Allowing Fr. Baccellieri to act as a priest was a signal to the public that Fr. Baccellieri comported with defendants' internal rules on the proper conduct of priests.

8.

At all times relevant to this complaint, defendants invited plaintiff and his family and all other members of the public to enter into a special, fiduciary relationship with the Roman Catholic Church, in part inviting plaintiff and his family to entrust the Church with their spiritual

matters and encouraging plaintiff to submit to the rules of the Church in exchange. At all times relevant to this complaint, one of the teachings of the Roman Catholic Church was a firm and consistent obedience to any instruction from a Roman Catholic priest. Plaintiff was raised in this belief, and it formed the basis for his relationship with Fr. Baccellieri in this case. In particular, defendants encouraged plaintiff and his family to involve the defendants' various priests frequently in their lives, and generally conditioning plaintiff – consistent with Defendants' teachings on how children should act toward priests – to respect, obey and revere any priest of the Roman Catholic faith.

9.

While acting as a priest, and for the purpose of furthering his assigned duties as a priest, Fr. Baccellieri identified plaintiff's family as one with an adolescent or teenage boy; befriended the plaintiff and his family, gained the family's trust and confidence as spiritual guide, and as a valuable and trustworthy mentor to plaintiff; gained the permission, acquiescence, and support of plaintiff's family to spend substantial periods of time alone with the plaintiff; and sought and gained the instruction of plaintiff's parents to plaintiff that he was to have respect for Fr. Baccellieri's authority and to comply with Fr. Baccellieri's instructions and requests.

10.

For the purposes of furthering his duties as a priest, Fr. Baccellieri also sought and gained the trust, friendship, admiration and obedience of the plaintiff in this case. As a result, plaintiff was conditioned to trust Fr. Baccellieri, to comply with Fr. Baccellieri's direction, and to respect Fr. Baccellieri as a person of authority in religious, spiritual, moral and ethical matters.

11.

While plaintiff and his family were parishioners at St. Therese Catholic Church and while D.B. attended parochial school and became an altarboy, Fr. Baccellieri befriended plaintiff. The abuse began when D.B. was 10 years old in 1982. The course of conduct described above is hereinafter collectively referred to as "grooming".

PAGE 4 -   COMPLAINT

12.

Fr. Baccellieri used the grooming process described above to accomplish his acts of abuse of the plaintiff. Fr. Baccellieri's grooming was (1) committed in direct connection and for the purposes of fulfilling Fr. Baccellieri's employment and agency with the defendants; (2) committed within the time and space limits of his employment and agency as a priest; (3) done directly in the performance of his duties as a priest; (4) undertaken, at least in part, with the desire to serve defendants; (5) generally actions of a kind and nature which Fr. Baccellieri was required to perform as a priest; (6) and done at the direction of, and pursuant to, the power vested in him by defendants. In the alternative, acts within the course and scope of Fr. Baccellieri's employment as an agent for defendants led to or resulted in plaintiff's abuse.

13.

Fr. Baccellieri, while acting within the course and scope of his employment and agency, and using the authority and position of trust as a priest and agent for the defendants – through the grooming process – induced and directed plaintiff to engage in various sexual acts with him. The sexual abuse resulted from a progressive series of actions that began with and continued to involve Fr. Baccellieri's performance of the ordinary and authorized duties of a priest, and/or the abuse occurred during occasions when Fr. Baccellieri had authority over plaintiff in his position as priest for defendants. Specifically, Fr. Baccellieri sexually abused and molested plaintiff when plaintiff was approximately 10 years old at the church, after D.B.'s altarboy duties, in the following ways:

    (a) Fr. Baccellieri touched D.B.'s penis over his clothing;

    (b) Fr. Baccellieri instructed D.B. to undress, then masturbated D.B.'s penis;

    (c) Fr. Baccellieri directed D.B. to touch Fr. Baccellieri's penis over and under his clothing;

    (d) Fr. Baccellieri discussed masturbation and his sexual habits; and

    (e) Fr. Baccellieri would ejaculate after masturbating himself and/or D.B.;

    (f) Fr. Baccellieri told D.B. "this is a secret between you, me and God."

PAGE 5 -   COMPLAINT

14.

As a result of Fr. Baccellieri's sexual abuse, molestation, and breach of authority, trust, and position as a priest, plaintiff suffered noneconomic damages as follows:

(a) Plaintiff has suffered and/or will suffer debilitating physical and emotional injury, including pain and suffering, physical and emotional trauma, and permanent psychological damage – distinct in time and logic from the abuse itself – all to his noneconomic damages in an amount to be proven at the time of trial.

15.

As an additional result of Fr. Baccellieri's sexual abuse, molestation, and breach of authority, trust, and position as a priest, plaintiff suffered economic damages as follows:

(a) Plaintiff incurred or will incur costs for counseling, psychiatric, psychological, and medical treatment, all to his economic damages in an amount which will be proven at the time of trial.

16.

D.B. did not discover the causal connection between the injury and the above child abuse, nor in the exercise of reasonable care should he have discovered the causal connection between the injury and the child abuse, more than five years prior to filing this action.

### FIRST CLAIM FOR RELIEF

(Sexual Battery of a Child/*Respondeat Superior*)

17.

Plaintiff realleges and incorporates by reference paragraphs 1-16, above.

18.

The abuse described in paragraph 13, above, constituted a harmful and offensive touching of plaintiff, to which plaintiff could not and did not consent.

19.

As a result of Fr. Baccellieri's abuse of plaintiff and Fr. Baccellieri's breach of authority, trust and position as a priest and authority figure to the plaintiff, plaintiff has suffered economic and noneconomic damages as detailed in paragraphs 14 and 15, above.

20.

In molesting plaintiff, Fr. Baccellieri acted with malice or a reckless and outrageous indifference to a highly unreasonable risk of harm and with a conscious indifference to the health, safety, and welfare of plaintiff. Punitive damages against an agent or attributable to a principal when conduct within the course and scope of agency leads to or results in the tort. Plaintiff is entitled to punitive damages against each defendant in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

(Intentional Infliction of Emotional Distress/*Respondeat Superior*)

21.

Plaintiff realleges paragraphs 1-16, above.

22.

Fr. Baccellieri, while engaging in the grooming process described above, knowingly and intentionally caused severe emotional distress to plaintiff when he sexually abused plaintiff. Plaintiff did in fact suffer severe emotional distress as a result of this abuse, and the sexual abuse of a child is beyond the bounds of all socially tolerable conduct.

23.

As a result of Fr. Baccellieri's intentional infliction of emotional distress on plaintiff and Fr. Baccellieri's breach of authority, trust and position as a priest and authority figure to plaintiff, plaintiff has suffered economic and noneconomic damages as detailed in paragraphs 14 and 15, above.

24.

In molesting plaintiff, Fr. Baccellieri acted with malice or a reckless and outrageous indifference to a highly unreasonable risk of harm with a conscious indifference to health, safety,

PAGE 7 -   COMPLAINT

and welfare of plaintiff. Punitive damages against an agent are attributable to a principal when conduct within the course and scope of agency leads to or results in the tort. Plaintiff is therefore entitled to punitive damages against each defendant in an amount to be proven at trial.

WHEREFORE, plaintiff prays for judgement against defendants as follows:

1. Noneconomic damages for plaintiff in an amount to be determined by a jury at the time of trial;
2. Economic damages for plaintiff in an amount to be determined by a jury at the time of trial;
3. Punitive damages in an amount to be determined by a jury at the time of trial;
4. For plaintiff's costs and disbursements incurred; and
5. For any other relief this Court deems just and equitable.

Dated:  June 15, 2022.

s/ Mark McDougal

Gregory Kafoury, OSB #741663
Kafoury@kafourymcdougal.com
Mark McDougal, OSB #890869
mcdougal@kafourymcdougal.com
Jason Kafoury, OSB #091200
jkafoury@kafourymcdougal.com
Attorneys for Plaintiff

PAGE 8 -   COMPLAINT